IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARITY D. CALLOWAY,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-0400 |
| | : | |
| **VILLANOVA UNIVERSITY,** | : | |
|     Defendant. | : | |

## MEMORANDUM

**COSTELLO, J.**                                                                                                                **MARCH 10, 2025**

      Currently before the Court is the Amended Complaint filed by *pro se* Plaintiff Charity D. Calloway that alleges claims of employment discrimination. For the following reasons, the Amended Complaint will be dismissed with prejudice.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

      Calloway used the Court's form complaint for alleging employment discrimination to initiate this civil action against Villanova University. (ECF No. 2.) Calloway also filed a motion to proceed *in forma pauperis*, as well as a motion for appointment of counsel. (ECF Nos. 1, 3.) By checking the appropriate locations on the form Complaint, Calloway sought to present claims of race discrimination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17, as well as the Pennsylvania Human Relations Act ("PHRA"). (ECF No. 2 at 4.) Calloway, who is African American, alleged that she suffered racial discrimination when she applied for employment at Villanova and that Villanova retaliated against her after she filed an incident report against one of its staff members based on an event that occurred during "pre-employment procedures." (*Id.*) Calloway asserted that Villanova rescinded a job offer "as a

---

[1] The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

result of the alleged discrimination and retaliation." (*Id.*) In support of her allegations, she incorporated by reference a Charge of Discrimination that she submitted to the Equal Employment Opportunity Commission. (*Id.* at 6, 10-12.)[2]

In a February 7, 2025 Memorandum and Order, the Court granted Calloway leave to proceed *in forma pauperis*, screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B),

---

[2] In the EEOC Charge, Calloway alleged that she was offered a waitstaff position in Villanova's catering department on or around October 5, 2023. (ECF No. 2 at 10.) She claimed that Villanova discriminated against her "based on [her] race, treated [her] in an unfair and hostile manner, [and] harassed and racially profiled [her] throughout the entire pre-employment process." (*Id.*) According to Calloway, she completed Villanova's pre-employment background checks and clearances, including FBI fingerprinting, and provided all requested documents. (*Id.*) She asserted that "[a]mongst the [Villanova's] staff who conducted the procedures," she was the only person of color. (*Id.*) On September 26, 2023, she was "made to wait well past the scheduled interview time without communication from the hiring manager, who later stated they didn't see" Calloway. (*Id.*) She further claimed that on October 24, 2023, Carolyn MacKay, who Calloway identified as "the Respondent's fingerprint staff," was "overly insistent" that Calloway provide her with "a form of identification other than what was required by the FBI fingerprint instructions and refused to accept" Calloway's "correct form of government-issued identification" until Calloway asked to speak with MacKay's supervisor. (*Id.*) As alleged, "the staff" continued to act "in a nonstandard manner" by taking Calloway's photo before she was fully seated in a chair and mishandling her "sensitive, identifying information." (*Id.*) She contended that she was "greatly mischaracterized and mislabeled as manipulative and combative" by Shannan Ott of Defendant's Human Resources department when Calloway "rightly disputed deceptive information reported by their third-party background screening company HireRight." (*Id.* at 10-11.) Calloway avers that Villanova was "satisfied with HireRight misreporting" her then-current employment "as a discrepancy – which was relevant work experience for the job offered." (*Id.* at 11.) She also claimed that Villanova replaced her current resume with an outdated resume and refused to correct the error. (*Id.*) As alleged, "the staff" became "repeatedly hostile and unreasonably angry" when she tried to correct the inaccuracies. (*Id.*)

Calloway further alleged in the ECCO Charge that she filed an "incident report" on October 24, 2023, with the on-campus public safety department about the events that occurred during the fingerprinting process. (*Id.*) She also claimed that she was contacted on November 8 "for a start date" and that Defendant withdrew the job offer on November 14, indicating that their hiring needs had changed. (*Id.*) According to Calloway, Villanova was aware that she had just ended her prior employment, and Villanova's decision to withdraw the job offer was retaliatory, discriminatory, and "potentially based in fraud." (*Id.*) She also alleged in the EEOC Charge that the failure to hire her was defamatory "as it gives the wrong impression" that she did not pass the background checks. (*Id.*)

dismissed the Complaint without prejudice to Calloway filing an amended complaint, and denied her request for appointment of counsel. (*See* ECF Nos. 9, 10.) The Court determined that Calloway's Complaint did not present plausible claims because her allegations of racial discrimination and retaliation were merely conclusory. (ECF No. 9 at 6-7.) Calloway did not plead facts that plausibly connected her race to the determination not to hire her, nor did she plausibly allege that she engaged in protected conduct and that Villanova refused to hire her because she did so. (*Id.*) Calloway was granted thirty-days leave to file an amended complaint if she could cure the deficiencies noted by the Court. (ECF No. 10.)

On March 3, 2025, Calloway filed a "Motion to Accept Amended Complaint" which sets forth her allegations of employment discrimination. (*See* ECF No. 11.) As noted above, the Court had granted Calloway leave to file an amended complaint. Thus, the Court construes this filing as a motion to amend the Complaint and the Amended Complaint.

In the Amended Complaint, Calloway again asserts that that Villanova made discriminatory decisions throughout the pre-employment process based on her race. (Am. Compl. at 1.) She claims that Villanova acted in a "grossly discriminatory manner" and misused her "personal identifying information for malicious purposes motivated by racial discrimination and with a disturbing pattern of *digital harassment*." (*Id.* (emphasis in original).)

Calloway also provides greater detail regarding her various interactions with Villanova staff that form the basis of her claims. She alleges that she arrived early for an interview on September 26, 2023, yet waited "close to fifteen minutes past the scheduled interview time." (*Id.* at 2.) Calloway claims that it was "uncommon behavior" for Mandi Hurvitz, the hiring manager, to have failed to see Calloway waiting for the interview. (*Id.*) She further contends that, during the interview, Hurvitz changed the position for which she was applying from bartender to

3

waitstaff, without giving Calloway adequate time to consider the change. (*Id.*) According to Calloway, Villanova did not state any concerns about Calloway's application for the bartender position prior to the interview, but in the rebuttal to the EEOC Charge of Discrimination, Villanova indicated that Calloway was unqualified for the bartender position. (*Id.*) Calloway "strongly believes she was treated in a racially discriminatory manner by the hiring manager who is Caucasian and was not given the standard fairness because of her race." (*Id.*) She further contends that Villanova was deceptive and had no basis for changing the application from bartender to waitstaff. (*Id.*) Nonetheless, Calloway avers that she received an electronic offer letter from Molly Power, Villanova's Human Resources Coordinator, on October 5, 2023. (*Id.*) The offer was contingent on the satisfactory completion of all background clearances, which Calloway contends was accomplished. (*Id.*)

On October 24, 2023, Calloway completed an in-person fingerprint screening (*Id.*) She contends that she "felt coerced into requesting assistance from a supervisor, as the Villanova Public Safety staff Carolyn MacKay repeatedly mishandled Ms. Calloway's sensitive, identifying information such as her social security number." (*Id.*) She alleges that MacKay behaved in "an unusual and nonstandard manner that concerned" her. (*Id.*) "For example, during the screening, Ms. MacKay asked Ms. Calloway to state her full social security number multiple times while typing the numbers and looking away from the screen and looking directly at Ms. Calloway instead." (*Id.* at 3.) Calloway further alleges that MacKay insisted that Calloway provide her driver's license instead of her passport, when, in fact, the third-party identity verification company required passport information. (*Id.*) Although a supervisor corrected MacKay and Calloway was able to use her passport for the verification, Calloway asserts that "Villanova was unable to answer what happened to the first screening application

4

that Ms. MacKay started with the wrong form of identification." (*Id.*) Calloway also claims that the fingerprint procedure "took longer than normal" and MacKay "repeatedly squeezed Ms. Calloway's fingers when she repeated the scanning of each individual finger. Ms. MacKay agreed at multiple times the fingerprint reader denied what was clearly a legible fingerprint scan." (*Id.*) After the fingerprint process was completed, Calloway filed an incident report with Villanova Public Safety regarding the way MacKay conducted the screening. (*Id.*) Calloway contends that after she filed the report, she experienced "a decline in the Defendant's manner in which they conducted the pre-employment procedures, a pattern of repeated discriminatory and retaliatory actions, unwarranted hostility, deceptive communications, coercion, and abusive data practices." (*Id.*) She alleges that Public Safety mishandled her personal identifying information and harassed her based on her race "as the main differentiating variable between the Villanova staff (Defendant) and Ms. Calloway (Plaintiff) is race." (*Id.*)

Calloway also alleges that she discussed her background check with "Senior HR Compliance Coordinator" Shannon Ott on November 2, 2023. (*Id.*) According to Calloway, Ott "became inappropriately defensive" when Calloway expressed concerns regarding discrepancies reported by HireRight, a third-party that completed the background check. (*Id.*) Calloway contends that Ott acted in "an unusual hostile and aggravated manner" because Calloway sought to correct information in the prior employment portion of the background check. (*Id.*) She further claims that Villanova falsely accused her of being "impolite" and that "Villanova made too many suspicious errors" with the use of her personal information. (*Id.*)

On November 6, 2023, Calloway hand-delivered her completed FBI background report to Ott, who informed Calloway that she had passed the background screening. (*Id.* at 4.) Calloway contends, however, that Ott, "in a suspicious manner," refused Calloway's "standard request to

receive written verification" that she passed the screening, and that Ott had an automatic "out of office" message for the remainder of the week. (*Id.*)

On November 8, 2023, Hurvitz contacted Calloway to determine a start date for the waitstaff position and they agreed upon November 20. (*Id.*) Calloway contends, however, that during the call, Hurvitz "acted in a deceptive manner" and "in a suspicious manner." (*Id.*) Calloway claims that her resume was "suddenly replaced with an outdated resume and with a different cell phone number," that she sought to correct the information, and was told by Hurvitz to "not worry" about the information. (*Id.*) According to Calloway, Hurvitz "showed no concern and did not take the standard course of action or sense of urgency to amend the *mysterious* issue" related to the outdated resume. (*Id.* (emphasis in original).) She claims the incorrect data omitted "about eight years" of her employment history. (*Id.*) That same day, Calloway emailed "Villanova's Human Resources" to request assistance with updating the resume and to express her concerns for "unfair treatment" throughout the screening process but was ignored. (*Id.*)

On November 14, 2023, "the Defendant" contacted Calloway by telephone and rescinded the job offer, stating that "the needs of the position changed." (*Id.*) She was later informed via email that "we received notice from the Dining Services Department that the temporary hiring needs have changed and will not be moving forward with an offer for the position at this time. (*Id.* at 4-5.) Calloway had resigned from a prior employer several days prior. (*Id.* at 5.)

Based on the foregoing, Calloway claims that Villanova egregiously and repeatedly mishandled her sensitive information, lacked the standard of care when they were requested to correct errors, were suspiciously satisfied with the underrepresentation of Calloway's employment history by the third-party background screening company, and were generally

uncivil toward her. (*Id.*) She concludes that Villanova acted with racial animus throughout the pre-employment process and based the decision to offer a lower paying job, and ultimately not hire her, on the basis of her race. (*Id.*) She further contends that "someone else" less qualified was hired and that she was treated more rudely and unfairly compared to other applicants due to her race. (*Id.*) Calloway requests the Court to "reopen" this matter but she does not specify any other request for relief. (*See id.*)

## II.     STANDARD OF REVIEW

Because Calloway has been granted leave to proceed *in forma pauperis*, the Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Amended Complaint if it fails to state a claim. The Court must determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Additionally, the Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the

7

complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.*

### III. DISCUSSION

As the Court explained in the February 7, 2025 Memorandum, federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)); *see also Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (claims under the PHRA are interpreted coextensively with their federal counterparts). Generally, a plaintiff in an employment discrimination action may establish a prima facie case of discrimination either through direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or based on circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. While "the elements of that prima facie case will vary with different factual situations, . . . at root, the plaintiff's initial burden is to show adverse actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024) (cleaned up).

The Court understands Calloway to bring Title VII claims against Villanova for allegedly subjecting her to disparate treatment and retaliation because of her race. "A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3d Cir. 2024) (quoting *E.E.O.C. v.*

*Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990)).[3]  Under the *McDonnell Douglas* framework, a plaintiff bringing a race discrimination claim based on disparate treatment must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of intentional discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).  Further, a plaintiff seeking to state a claim for retaliation under Title VII must show that: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action.  *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022).

However, to plead a claim under Title VII, a complaint need not allege each element of a prima facie case.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."), and *id.* at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination.").  Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of a plaintiff's claim and demonstrate a plausible right to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to

---

[3] "For a successful disparate treatment claim, proof of the employer's discriminatory motive is critical." *Qin*, 100 F.4th at 472.  Discriminatory intent can be shown with direct evidence, or circumstantial evidence.  *Id.*  "Direct evidence of disparate treatment is evidence that is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case as is necessary in a pretext action to shift the burden of production." *Id.* (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995)).  "Discriminatory statements constitute direct evidence of discrimination where there is evidence linking the speaker to the employer's adverse employment action." *Id.* (citing *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 515-16 (3d Cir. 1997)).

"raise a right to relief above the speculative level"); Fed. R. Civ. P. 8(a)(2) (requiring that complaints merely contain a "short and plain statement showing that the pleader is entitled to relief"). Thus, to pass statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii) or to survive a motion to dismiss, the complaint must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler*, 578 F.3d at 213; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) ("Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.") (cleaned up).[4] Applying this framework to Calloway's claims, she must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of disparate treatment and retaliation.

Calloway alleges that: Hurvitz caused Calloway to wait close to fifteen minutes past the scheduled interview time and that Hurvitz claimed to have failed to see her; the job was changed from bartender to waitstaff during the interview without giving Calloway adequate time to consider the change; MacKay mishandled Calloway's identification; the fingerprint procedure "took longer than normal" and her fingers were squeezed; Calloway filed a report regarding the way MacKay conducted the screening; Ott was hostile and accused Calloway of being impolite

---

[4] The Third Circuit Court of Appeals explained this analysis in the context of an age discrimination claim:

> Martinez's complaint must allege enough facts to show that he has a plausible entitlement to relief. To understand that concept in the context of age-discrimination claims, we must work backwards from the endgame. So we first discuss what facts the plaintiff must ultimately prove at trial to win, then what he must show to survive summary judgment, and finally what he must allege to avoid dismissal.

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).

when Calloway sought to correct discrepancies in a report prepared by HireRight, the third-party entity that conducted the background check; Ott suspiciously refused Calloway's request to receive written verification that she passed the background check; Hurvitz showed no concern and did not take the standard course of action to correct the "mysterious issue" related to Calloway's outdated resume; and Villanova rescinded the waitstaff job offer after determining that its temporary hiring needs had changed. (*See* Am. Compl. at 1-5.) Based on these allegations, Calloway concludes that the adverse decisions made by Villanova staff throughout the hiring process were based on her race because members of the staff she interacted with were Caucasian and she is not. (*See, e.g., id.* at 2 ("Ms. Calloway strongly believes she was treated in a racially discriminant manner by the hiring manager who is Caucasian and was not given the standard fairness because of her race."); 3 ("Ms. Calloway believes Villanova Public Safety mishandled her sensitive, personal identifying information and harassed her based on her race, as the main differentiating variable between the Villanova staff (Defendant) and Ms. Calloway (Plaintiff) is race.".)

      Calloway's assertions that her race was a factor in any of the actions and determinations of Villanova staff do not meet the pleading standard. "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786; *see also Martinez*, 986 F.3d at 265 ("Plausible does not mean possible."). While she contends that she suffered discrimination on the basis of her race, Calloway does not plead facts that plausibly connect her membership in a protected class to the determination not to hire her, nor does she plausibly allege that she engaged in protected conduct and that Villanova refused to hire her because she did so. Further, her allegations do not raise a reasonable expectation that discovery will reveal

11

evidence that any adverse hiring decisions were based on her race. Having reviewed Calloway's submission in its entirety and construing the allegations in the Amended Complaint liberally, the Amended Complaint falls short of presenting plausible claims and will be dismissed. *See, e.g., Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (cleaned up); *Jean-Pierre v. Schwers*, 682 F. App'x 145, 147 (3d Cir. 2017) (*per curiam*) (affirming dismissal of race discrimination claim because plaintiff failed to plead facts that would plausibly support an inference of intentional discrimination).

### IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As Calloway has already been given an opportunity to cure the defects in her claims and has been unable to do so, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). Accordingly, Calloway's Amended Complaint will be dismissed with prejudice. An appropriate Order follows.

BY THE COURT:

*/s/ Mary Kay Costello*
_____
**MARY KAY COSTELLO, J.**